DUPRIS, C.J.
SUMMARY OF PROCEEDINGS
On April 12, 2012, CCT/CFS filed for temporary custody of TR, a minor child of Randall and LaCourse, Appellants herein. The Temporary Custody Petition alleged the child was in immediate danger of harm if she remained with Appellants. This allegation was based on the father’s history of physical abuse of the mother, as well as the police acting on information from a CCT caseworker that the parents were violating a no-eontact order. The Tribes also alleged TR should be taken into temporary custody because of another case in which TR’s sibling, BR, was found to be a Minor-In-Need-of-Care (MINOC). The Tribes was granted temporary custody.
On April 30, 2012 the Tribes filed a Petition for MINOC regarding TR. The allegations are identical to the allegations in the Petition for Temporary Custody. The adjudicatory hearing was held on May 21, 2012 at 2:00 p.m. Neither parent was present at the beginning of the hearing. The mother’s spokesman was present and stated on record he did not have contact with his client, nor did he know where she was at the time. The spokesman for the father did not appear for the hearing. From the record it appears he was appointed to represent the father only three (3) days before the hearing.
The Trial Judge proceeded with the hearing without the presence of the parents and took testimony from a caseworker, who was not the investigating caseworker, regarding the allegations in the Petition. The Trial Judge adjudicated TR to be a MINOC at the conclusion of the caseworker’s testimony. At the conclusion of the Judge’s findings and order on record finding the child to be a minor-in-need-of-care, both parents and Mr. Rodrigues, the spokesman for the father, appeared. Mr. Rodrigues alleges he was in other court proceedings at the start of the adjudicatory hearing herein, and arrived at 2:15 p.m., at which time he was told the hearing was over and the minor was declared a MINOC. The record does not indicate that either parent nor Mr. Rodri-gues addressed the Court, on the record, and asked for the hearing to be reopened.
The parents, Appellants herein, filed an Interlocutory Appeal and a request for a Writ of Mandamus on May 22, 2012. *75 Thereafter, on May 29, 2012, the Trial Judge entered a written order from the adjudicatory hearing.[1] The written findings acknowledged that both parents appeared after the Court made its ruling, even though such finding was not put on the record.
On June 15, 2012, at the Initial Hearing we found cause to grant the appeal and noted that it is not an Interlocutory Appeal because the Trial Judge made a final decision on the issue of MINOC. We also found cause to vacate the MINOC Order, and remand for a new hearing.[2] We further found cause to- dismiss the request for a Writ of Mandamus in that no party in attendance knew' why it had been filed nor could they present any argument for its acceptance.
ISSUES
1) Did the Trial Court err in not going back on the record to allow[7] the parents an opportunity to be heard when they appeared at the end of the hearing?
2) Did the Trial Court err in finding the minor child herein to be a Minor-In-Need-Of-Care based on the evidence presented?
STANDARD OF REVIEW
The first issue necessitates a review of the judge’s actions in managing the case. We review this issue under the abuse of discretion standard. Under this standard we presume the trial judge’s decision to be correct unless it is shown that the decision was manifestly unreasonable, or made on untenable grounds, or made for untenable reasons. Grunlose v. CCT, 5 CCAR 26, 3 CTCR 25, 27 ILR 6033, - Am. Tribal Law -, 1999 WL 35016007 (1999); Marchand v. CCT, 8 CCAR 18, 4 CTCR 19, 32 ILR 6012, - Am. Tribal Law -, 2005 WL 6462797 (2005).
The second issue goes directly to the trial judge’s review of the evidence (facts) and application of the law to the facts. It is a mixed question of facts and law. The appropriate standard of review for a mixed question may be determined by reference to the principles which underlie the established rules of standard of review jurisprudence: when the concerns of judicial administration favor the trial judge, his determination should be subject to clearly erroneous review, and when the concerns of judicial administration favor the appellate court, the trial judge’s determination should be subject to de novo review. CCT v. Naff, 2 CCAR 50, 2 CTCR 08, 22 ILR 6032 (1995).
We have set out standards and guidelines for the trial court to follow when assessing facts in MINOC cases. As we will show in our opinion below, these standards and guidelines are not always being followed in MINOC cases, including the instant case. This alone supports a finding that the concerns of judicial administration favor the Court of Appeals. We review the second issue de rumo.
DISCUSSION
1. Did the Trial Court err in not going back on the record to allow the parents an opportunity to be heard when they appeared at the end of the hearing?
This is the second time we have been asked to review a judgment entered *76 against parents in a MINOC ease where the parents arrived late for the proceedings and were not allowed to present evidence. See, Rosas and Stanger v. Children and Family Services, 11 CCAR 28, 6 CTCR 06, 10 Am. Tribal Law 211 (2012) [3]. In Rosas the parents notified the Court, through their spokesmen, both who were present, they were on their way but would be late. The Trial Court, after a short recess, went back on record and granted the Tribes’ request for a default on the MINOC Petition. The parents appeared just minutes after the Court adjourned. The Trial Judge refused to go back on record, and entered an order finding the children to be Minors-In-Need-Of-Care. In Rosas the Judge, who is the same judge in this case, did not even allow the spokesmen for the parents to speak for their clients in the absence of their clients’ attendance.
In this case one spokesman did not have contact with his client before the hearing, and the second spokesman had only been appointed three days before the hearing, and had not yet met with his client. The Order From Adjudicatory Hearing (Order) dated May 29, 2012 notes the Court put on record that neither parent was present, nor asked for a delay or continuance. The Order further notes both the parents appeared at the end of the hearing. Neither of these findings are supported by the oral record of the hearing. The oral record shows the Clerk of the Court was asked if the mother, Appellant LaCourse, had notice, to which the Clerk replied “she was aware of [the hearing].” No inquiry was made by the Court or any of the parties present if the father, Appellant Randall, had notice of the hearing.
There is paucity of information on the record to indicate why the judge chose not to allow the parents/Appellants to go on record when they appeared within minutes, i.e. less than twenty (20) minutes from the time the hearing began. In Ro-sas, supra, the parents’ attorneys were present but not allowed to represent their clients to avoid a default judgment. The Trial Court, in Rosas found the minor to be a MINOC just based on the allegations in the Petition without taking any evidence on the record.
In the instant case the Trial Court took evidence in the form of testimony from a caseworker from the Tribes’ Children and Family Services (CFS). As we will discuss below, it was not the best evidence. Appellant/LaCourse’s attorney was allowed to cross examine the CFS witness, but did not have the assistance of his client at the time.
It appears, from the practice of the Trial Court to deny parents a right to present their cases when they are even just a little late for the hearing, that MI-NOC hearings are being treated like the adversarial proceedings in criminal cases. We have no findings either on the oral record or from the written findings to support a reason why the Judge was not willing to allow the parents/Appellants an opportunity to present evidence in the case. Although our criminal court has become more westernized, the juvenile court has an opportunity to draw on the traditions and customs of our tribes in fashioning decisions to strengthen our families and communities.
 Although a delay in a proceeding may be troublesome, here one must first put it in context of the purpose of the *77 juvenile code. The code must be interpreted liberally in order to preserve and strengthen a child’s family ties as well as his cultural ties to the Tribes. See CTC 5-2-1, Purpose and Construction.[4] An important purpose of the Juvenile Code is to prevent the breakup of families by offering the assistance of the Tribes’ programs and resources to families in trouble and in need of assistance. Id.
The record does not reflect any reason the Court could not have heard from the parents and their spokesmen before entering its final adjudicatory order, especially based on the sparse evidence presented herein. To treat the adjudicatory hearing as a pure adversarial hearing flies in the face of the purposes of the juvenile laws.[5] The parents have a due process right to present evidence; each case must be assessed individually on whether their late attendance is so egregious as to forego this right. This is the only way to ensure a child is given the full benefit of the law and of maintaining his ties to his family and culture.
In this case, the spokesman for the father, Mr. Rodrigues, had only been appointed three days before the hearing, and was delayed because he had already been scheduled in another court hearing at the time of the hearing herein. The Court failed to consider this on the record, thereby denying Appellant/father his due process right to present evidence on his own behalf.
Based on the foregoing we hold the Trial Court abused its discretion in that its decision to deny the parents an opportunity to be heard when they appeared at the end of the hearing was manifestly unreasonable under the circumstances of this case and the applicable law.
2. Did the Trial Court err in finding the minor child herein to be a Minor-In-Need-Of-Care based on the evidence presented?
Based on the discussion below, we find the Court did err in finding the minor to be a MINOC based on the evidence presented. The Petition for Minor-in-Need-of-Care (MINOC) (hereafter Petition) is identical to the Temporary Custody Petition, alleging TR was a MINOC in that he “has been subjected to or has the potential to be subjected to,[6] injury, sexual abuse, or negligent treatment or maltreatment by a person who is legally responsible for the *78 minors’ [sic ] welfare under circumstances which indicated that the minors’ [sic] health, welfare and safety are harmed thereby; [and he] ... has not been, or cannot be provided with adequate food, clothing, shelter, medical care, education or supervision by her parent, guardian or custodian necessary for their [sic ] health and well-being ...”
The relevant facts asserted in the Petition to support the allegation of MINOC are as follows:
1. TR was placed in protective custody on April 11, 2012. No reason was given in the allegation for the reason for the protective custody.
2. Caseworker Buffy Nicholson saw the parents/Appellants traveling together in a car. The police stopped them and arrested Appellant Randall for violating a no-contact order with Appellant LaCourse, as well as for DWS. The facts do not allege when this stop happened.
3. Appellant Randall was previously charged in state court with Assault 4th Degree-Domestic Violence, Appellant LaCourse being the victim. Again, the date of the offense is not given; only that the assault occurred while LaC-ourse was pregnant with TR.
4. Randall has also been charged with “Domestic Violence” in tribal court (date unknown from a reading of the allegations) according to the alleged facts. Petitioner alleges this shows a pattern of domestic violence by Randall against LaCourse.
5. Petitioner alleged LaCourse has made it clear she will remain with Randall.
6. Petitioner alleged CFS has “grave concern” for the child, and “is concerned that the father may assault and injure the minor child.”
7. Finally, Petitioner alleged that TR’s older brother, BR, is an adjudged MI-NOC, the Court having found that Randall physically abused BR and LaC-ourse failed to protect BR from this abuse.
This is summation of the facts alleged, and are not the exact wording nor all of the allegations.
The purpose of an Adjudicatory Hearing is to hear evidence which shows by clear, cogent and convincing evidence, that the minor is a MINOC. CTC 5-2-261. The Petition must allege specifically what acts or omissions were committed by the parents or guardians to support a finding the child is a MINOC. In Re the Welfare of A.T, and J.T., minors, Weber, Appellant, 8 CCAR 32, 4 CTCR 23 (2005). The statutory definition of MINOC does not include the “a potential to be subjected to” language included in the Petition; the Petitioner cannot change what the law is without a statutory change. Therefore, the facts must show actual injury, neglect, abuse, or maltreatment under the alleged section of CTC 5-2-30(1). Further, we have held that there must be a direct correlation between the allegations in the Petition and the proof given in the hearing. Id.
A review of the evidence presented to the Court show two (2) glaring problems. First, the testimony of the caseworker, Gary Nicholson, was not the best evidence. It was based solely on hearsay. Mr. Nicholson admitted that he was basing his testimony on what he was told to say by Buffy Nicholson, the caseworker for the case. He admitted he did not do any independent investigations. He did not know the age of the minor in question; he didn’t know if any visitation had taken place; he did not have any personal knowledge of the case. At one point he stated “Buffy wanted to make sure I’d say it’s *79 important the child is in a safe environment .... ”
Mr. Nicholson’s testimony does not meet a clear, cogent and convincing standard of proof. The best that it supports is that the caseworker, Buffy Nicholson, is concerned for what potentially may happen to TR. We note that this is not a trivial concern, but it does not meet the legal level of proof needed. Hearsay cannot be cross-examined, nor subject to a test of veracity.
The second evidentiary problem is how the Court took judicial notice of another MINOC case involving the parents herein. In Louie v. CCT, 8 CCAR 49, 4 CTCR 27, - Am. Tribal Law -, 2006 WL 6557901 (2006) we set out the standards for the Court to follow when taking judicial notice in an evidentiary hearing. In In Re Gorr, Marchand, Appellant, 8 CCAR 76, 4 CTCR 31 (2006) we held the judicial notice standards also apply to juvenile court cases.
When the Trial Court is asked to take judicial notice in an Adjudicatory Hearing, the following must be considered:
(1) taking judicial notice is disfavored, especially when the Court takes judicial notice of facts that would prove or disprove an allegation of the MINOC petition;
(2) Courts may take judicial notice of public records, but only to prove the existence of the orders, and not the proof of the facts therein; and
(3) when a Court is going to take judicial notice, the Judge should (a) give notice to the parties of what he is going to take judicial notice so the parties may provide rebuttal evidence; and (b) allow the parties to present, such rebuttal evidence. Id.
The Court did none of the above before taking judicial notice. Instead, he took as true the findings of fact in the case involving TR’s brother, BR. See Order from Adjudicatory Hearing, May 29, 2012, at page 2. The Court included very specific findings which are not on the oral record for this ease.[7]
The first concern in a dependency case should always be what is in the best interests of the minor involved. In Re J.L.V., 8 CCAR 23, 4 CTCR 21, 32 ILR 6142 (2005). What is in the best interests of the child would include the Court providing the best possible adjudication of the merits of the case, free from procedural errors, so that the child and his family may embark on a healing of the problems which brought them to the Court in the first place. This has not taken place in this case. We find the Trial Court erred in finding the minor to be a minor-in-need-of-care based on the evidence presented.
Based on the foregoing, we REVERSE and REMAND to the Trial Court for further actions consistent with our rulings herein.
It is so ORDERED.

. The order was presented by CFS’s spokesman, Curtis Slatina, Acting Lead Prosecutor. The Judge signed the presented order even though it was not signed off by any of the three other spokesmen, Mr. Liesenfelder, Mr. Rodrigues, and Mr. Parker. The Order was signed after the initiation of this Appeal.

. It was noted on the record that Mr. Daryl Rodrigues, spokesman for Appellant Randall, failed to appear for the hearing. He did not notify the Court, either before or after the hearing, of the reason for his absence.

. The written Opinion and Order in Rosas was entered on June 19,2012, after the hearing in this case. In Rosas, as in this case, we did inform the parties on record that we were reversing the Trial Court's order on the MI-NOC hearing.

.It is the purpose of this Chapter to secure for each child coming before the Tribal Juvenile Court such care, guidance, and control, preferably in his own home, as will serve his welfare and the best interests of the Colville Confederated Tribes; to preserve and strengthen family ties whenever possible; to preserve and strengthen the child’s cultural and ethnic identity wherever possible; to secure for any child removed from his home that care, guidance, and control as nearly equivalent as that which he should have been given by his parents to help him develop into a responsible, well-adjusted adult; to improve any conditions or home environment which may be contributing to his delinquency; and at the same time, to protect the peace and security of the community and its individual residents from juvenile violence or law-breaking. To this end, this Chapter shall be liberally construed.

. The denial of participation in the hearing can also be considered acultural. It is settled tradition that everyone who has an interest in a matter, and who wishes to have input is allowed to have his say. Judges, as tribal leaders, must be ever-vigilant in promoting our traditions whenever the opportunity arises in the court-context. In this way we can help preserve what makes tribal courts unique and necessary for resolution of tribal issues.

. The language "or has the potential to be subjected to” is not in the legal definition of a MINOC under CTC 5-2-30(1). As such, it cannot form a basis for a MINOC finding.

. In the Order from Adjudicatory Hearing the Court found facts regarding physical abuse by Randall towards BR and regarding the noncompliance of the parents in the BR case. It also had unsupported findings regarding the notice given the parents (at page 1) as well as the late appearance of the parents, and nonappearance of Randall's spokesman, Mr. Rod-rigues.